EL PUEBLO, DEMANDANTE Y APELADO, *v.* ALVAREZ, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Arecibo en causa por infracción a la Ley de Salario Mínimo.

No. 1490.—Resuelto en diciembre 9, 1920.

SALARIO MÍNIMO—CONSTITUCIONALIDAD DE LA LEY DE—POLICE POWER.—Siguiendo los principios sostenidos en la opinión emitida por la Corte Suprema de Oregón en el caso de *Stettler* v. *O'Hara*, 69 Ore. 519; 139 Pac. 743; L. R. A. 1917 C, 944 (cuyo caso fué confirmado por la Corte Suprema de los Estados Unidos por virtud de empate en la votación de la sentencia), se declara por el Tribunal Supremo de Puerto Rico que la Ley del Salario Mínimo promulgada por la Legislatura Insular en junio 9, 1919, es constitucional.

ID.—ID.—El hecho de que la Ley del Salario Mínimo aprobada por la Legislatura Insular en junio 9, 1919, no proporciona una oportunidad al patrono y al empleado de ser oídos antes de fijarse el salario mínimo no la hace necesariamente anticonstitucional; y en ausencia de prueba de que un salario mínimo es irrazonable o surte el efecto de una confiscación de la propiedad del patrono, debe presumirse que la legislatura investigó las condiciones y fijó un salario mínimo razonable.

ID.—"SALARIO"—"WAGES"—TRABAJO.—La palabra "salario" usada en la Ley de Salario Mínimo equivale a "*wages,*" en inglés, que significa el estipendio obtenido por un trabajador considérese o no su producción total por el tiempo servido o por la cantidad de trabajo rendido.

ID.—TRABAJO POR AJUSTE O PESADA.—Atendida la redacción de la Ley de Salario Mínimo, es preciso concluir que la intención de la legislatura fué

la de que la mujer trabajadora tuviera un salario lo más razonable posible para sostenerse, por lo que dicha Ley es aplicable tanto cuando las empleadas trabajan por ajuste o pesadas, como cuando trabajan a razón de un tanto por tiempo determinado.

Id.—Tabaco—Elaboración de Tabaco en Rama—Ocupación Industrial.—La elaboración del tabaco en rama y demás manipulaciones que varían su estado natural son necesariamente una industria o comercio y no una ocupación agrícola.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. O. B. Frazer.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

Fernando Alvarez, que emplea mujeres en la preparación del tabaco, fué declarado culpable y condenado a pagar una multa de $20, sustancialmente por haber pagado a Regina Quiñones la suma de $4 por determinada semana cuando debió haberle satisfecho $6, por infracción a la Ley del Salario Mínimo, aprobada en 9 de junio de 1919, la cual es como sigue:

"LEY

"Estableciendo el mínimum de jornal para las mujeres trabajadores, y para otros fines.

"*Decrétase por la Asamblea Legislativa de Puerto Rico:*

"Sección 1.—Será ilegal por parte de cualquier patrono que empleare mujeres, niñas inclusive, en ocupaciones industriales, comerciales y de servicio público pagarles un salario menor del especificado en esta Sección, a saber: menores de 18 años a razón de cuatro (4) dólares semanales y mayores de esa edad a razón de seis (6) dólares semanales. Exceptúase de lo dispuesto en esta Sección las tres primeras semanas de aprendizaje. Las disposiciones de esta Ley no serán aplicables a la agricultura ni a las industrias agrícolas.

"Sección 2.—Cualquier patrono que pague a cualquier mujer, niñas inclusive, un salario menor del específicado en la Sección 1, será culpable de *misdemeanor*, y si resultare convicto, será penado con multa no mayor de cincuenta (50) dólares ni menor de cinco (5) dólares.

"Sección 3.—El Negociado del Trabajo velará por el cumplimiento de esta Ley.

"Sección 4.—Toda ley o parte de ella que se oponga a la presente, queda por ésta derogada.

"Sección 5.—Esta Ley empezará a regir a los noventa días después de su aprobación.

"*Aprobada el 9 de junio de 1919.*"

Uno de los motivos de error es que dicha ley es anticonstitucional. Aunque este punto no fué discutido en todos sus pormenores en el presente caso, se nos ha llamado la atención hacia el mismo de un modo mucho más formal en otros casos, por lo que creemos conveniente tratar de la cuestión en esta opinión.

Consideramos innecesario examinar toda la historia de la legislación relativa al salario mínimo. Será suficiente con decir que Oregon decretó una ley fijando el salario mínimum para mujeres y niños que fué considerada por la Corte Suprema de aquel Estado en el caso de *Stettler* v. *O'Hara,* 69 Ore. 519; 139 Pac. 743; L. R. A. 1917-C, 944. Este caso de Oregon fué apelado a la Corte Suprema de los Estados Unidos y confirmado allí como consecuencia necesaria de un voto de empate.

Se alega que tal voto de empate apenas constituiría jurisprudencia decisiva, pero tal decisión es persuasiva si no obligatoria para los jueces de una corte inferior. Podemos, sin embargo, como si el principio estuviera por primera vez ante nos, ir un poco más lejos, pues estamos enteramente de acuerdo con la opinión como fué emitida por la Corte Suprema de Oregon en el caso de *Stettler* v. *O'Hara, supra.*

El Juez Asociado Sr. Eakin en ese caso indicó que la entrada de la mujer en el campo de muchos empleos que anteriormente estaban desempeñados por hombres en los cuales ella trató de competir con el hombre era una innovación reciente y creó una condición que los legisladores habían considerado conveniente, en el ejercicio de sus deberes, investigar y en cierto modo regular: que fué admitido por todos los investigadores sobre la materia, que eran muchos, que la estructura física de la mujer y su posición en la economía

de la raza la incapacitaban para poder competir con los hombres en fortaleza o resistencia; que en esto insistió debidamente el Juez Sr. Brewer en el caso de *Muller* v. *Oregon,* 208 U. S. 412, que fué una apelación procedente de Oregon en la que se discutía la constituciónalidad de la ley que fijaba el máximum de horas de trabajo para las mujeres, donde dijo:

"Es patente el hecho de que la estructura física de la mujer y el cumplimiento de sus funciones maternales la colocan en posición desventajosa en la lucha por la subsistencia. Esto es especialmente cierto cuando descansan sobre ella las obligaciones de madre. Aún cuando no las tenga, según el testimonio copioso de la Asociación Médica el continuar por largo tiempo de pie en su trabajo, repitiendo esto de día en día, es cosa que tiende a producir efectos perjudiciales en su organismo y como se necesitan esencialmente madres saludables para que la prole sea vigorosa, el bienestar físico de la mujer viene a ser una cuestión de interés público y de cuidado a fin de preservar la fortaleza y el vigor de la raza. La historia además revela el hecho de que la mujer ha dependido siempre del hombre. El estableció su control al principio mediante su superioridad en constitución física y este poder en varias formas cuya intensidad decrece ha seguido hasta el presente. Al igual que los menores, aunque no en la misma extensión, ha sido ella considerada en las cortes como que necesita especial cuidado para que sus derechos puedan ser conservados. * * · * Diferenciada en estos particulares del otro sexo, queda ella debidamente colocada en una clase por sí y la legislación, cuyo fin fué su protección debe ser sostenida, aún cuando no sea necesaria igual legislación para los hombres y no pudiera ser mantenida. Es imposible cerrar los ojos ante el hecho de que aún mira ella hacia su compañero y que depende de él; * * * que su estructura física y el debido cumplimiento de sus funciones maternales—teniendo en cuenta no simplemente su salud propia, sino el bienestar de la raza—justifican la legislación para protegerla de la codicia así como de la pasión del hombre. Las limitaciones que este estatuto fija a sus facultades contractuales, a su derecho a entrar en arreglo con su patrono en cuanto al tiempo que habrá de trabajar, no se imponen exclusivamente para su beneficio, sino también y en gran parte para beneficio de todos. El empleo de muchas palabras no hace que esto sea más claro. * * *

Esta diferencia justifica una diferencia de legislación y sostiene aquello que tiene por fin compensar algunas de las obligaciones que pesan sobre ella.''

El Juez Asociado Sr. Eakin también hizo la siguiente cita de la Comisión sobre Juntas de Salarios Mínimos de Massachusetts en su informe de enero de 1912, a saber:

''Las mujeres en general trabajan debido a la imperiosa necesidad y en la mayoría de los casos las entradas generales de la familia no son sino adecuadas para afrontar el costo de la vida. En estos casos no queda a opción de la mujer el renunciar un empleo porque sea poco remunerado. Cada dólar que se acumula al ingreso de la familia se necesita para aliviar un poco el peso que tienen los demás. Sean o no los salarios de tal mujer menos de lo que necesita para vivir y de lo que razonablemente es necesario para mantener al trabajador en salud, la industria que la emplea recibe el producto de la energía de un ser humano a menos de su costo y hasta ese punto es parasítica. El saldo debe obtenerse de algún modo.'' * * *

En reflejo de lo que expresan estos jueces como razón en la cual estriban estas leyes, tal vez sería pertinente hacer alguna cita de la prueba presentada en este caso.

''REGINA QUIÑONES: P.—Y Ud. ha convenido en trabajar por pesadas? C.—Como soy una pobre tuve que entrar a como me pagarán.''

A preguntas del Juez declaró:

''Me entendí con Juanito el que representa la fábrica. Le pedí trabajo y me dió trabajo. No traté con él. Le dije, me da trabajo y me dió trabajo. No convinimos nada.''

Ahora bien sea o no éste enteramente un reflejo verdadero de las condiciones bajo las cuales la mujer en general en Puerto Rico entra en un empleo, proporciona sin embargo, un ejemplo gráfico de las condiciones reseñadas por el Juez Asociado Sr. Brewer y por el Juez Eakin.

El caso de *Stettler* v. *O'Hara,* que es el único en el cual

la Corte Suprema de los Estados Unidos ha tenido que considerar la ley del salario mínimo trataba de un estatuto que está redactado .en términos distintos del nuestro. En Oregón la legislatura de ese Estado confiaba la determinación de lo que debía ser el salario mínimo para ciertas industrias a una comisión especialmente nombrada a la que se imponía la obligación de notificar y oir a las partes interesadas en la cuestión del mínimum del salario. Se argulle que la ley de Oregón es fundamentalmente distinta de la nuestra porque la primera proporciona una oportunidad al patrono y al empleado de ser oídos antes de fijarse el salario mínimo, cosa que en manera alguna tuvo en cuenta el estatuto de Puerto Rico. Debe observarse que la audiencia y notificación las fijaba el propio estatuto de Oregon. No hemos podido encontrar ningún caso en el que se declare que un tipo fijado por una legislatura sea anticonstitucional porque las partes interesadas en el tipo fijado no hayan tenido la oportunidad de ser oídas. Por el contrario, por lo menos cuando se trata de corporaciones de servicio público, los tipos fijados por la legislatura son razonables por presunción y también ha de presumirse que la legislatura habrá investigado las condiciones y resuelto por sí misma cuál es el salario mínimo razonable. *Louisville and Nashville Railroad Co.* v. *Garrett et al.,* 231 U. S. 298 307, autoridades citadas en *Stettler* v. *O'Hara* L. R. A. 1917 C, 953; *Detroit and Mackinac Railway Co.* v. *Michigan Railroad Commission,* 235 U. S. 402, 406; *Northern Pacific Railway Co.* v. *State of North Dakota,* 236 U. S. 585, y notas en American Annotated Cases 1916 A. 8.

Si determinado patrono está convencido de que un salario mínimo es irrazonable o tiene el efecto de una confiscación estamos convencidos de que el peso de la prueba incumbe al patrono para demostrar tal irrazonabilidad o confiscación, cosas que no se intentaron hacer en ninguno de los casos sometidos a nosotros. Para sostener la presunción en favor de la razonabilidad de un tipo fijado por la

legislatura está el principio general de que las cortes están obligadas a dar efecto a un acto legislativo a menos que sea claramente anticonstitucional. *Ponce Lighter Co.* v. *El Municipio de Ponce et al.,* 19 D. P. R. 760; *El Pueblo* v. *Central Fortuna,* 22 D. P. R. 106; *El Pueblo* v. *Subirá,* 27 D. P. R. 615; *El Pueblo* v. *Barnés,* 28 D. P. R. 907.

En apoyo además de la constitucionalidad de la ley está la misma Ley Orgánica. El principio sobre el que dependen bien las horas de trabajo o las leyes de salario mínimo, es que la legislatura tiene derecho a prescribir lo necesario para la seguridad y salud de los trabajadores y especialmente de las mujeres. El apelante para atacar la constitucionalidad de esta ley tiene necesariamente que basarse en el párrafo primero del artículo 2 de la Ley Orgánica el cual dispone que "no se pondrá en vigor en Puerto Rico ninguna ley que privare a una persona de la vida, libertad o propiedad sin el debido procedimiento de ley, o que negare a una persona de dicha isla la protección igual de las leyes," pero a esto sigue en un párrafo posterior el siguiente precepto:

"Nada de lo contenido en esta Ley será interpretado en el sentido de limitar la facultad de la Asamblea Legislativa para decretar leyes para la protección de la vida, salud y seguridad de empleados y obreros."

Sin embargo, el señalamiento de errores en que se ha insistido más que en ningún otro es el hecho de que el apelante en este caso y en todos los demás sometidos hacia la misma fecha trabajaba no por un jornal sino por pesada. Se sostiene enfáticamente que el título de la ley y el uso de las palabras en la misma muestran que la legislatura no tuvo en cuenta en absoluto a ninguno que no estuviera trabajando bajo una base de tiempo.

Puerto Rico es principalmente una comunidad agrícola y no industrial. Las fábricas que emplean mujeres son relativamente pocas en número y es de presumirse que eran conocidas de la legislatura al fijar el tipo de salario mínimo.

Al escribir esto no sabemos absolutamente de ninguna fábrica en particular donde las mujeres trabajen por hora o por día; pero por el contrario sí conocemos un gran número cn las que las mujeres trabajan por pesadas como en los casos sometidos a nuestra consideración. Tal vez no podamos tomar conocimiento judicial de las condiciones del trabajo en toda la isla pero seguramente que la legislatura pudo haberlo averiguado. Entonces, donde hay relativamente un gran número de mujeres que trabajan por pesadas estaríamos poco dispuestos a no darles el beneficio de la Ley del Salario Mínimo a menos que claramente estuviéramos convencidos de que las palabras usadas por la legislatura no podían tener aplicación a mujeres que trabajan por pesadas. Es cierto que el título de la ley en castellano contiene la palabra ''jornal,'' pero el cuerpo principal de dicha ley contiene la palabra ''salario,'' y ''salario'' es la palabra más general equivalente a *''wages,''* en inglés, que significaría el estipendio obtenido por un trabajador considérese o no su producción total por el tiempo o por la cantidad de su trabajo. No existe ninguna otra palabra en castellano que tenga tal sentido general como el que se da a la palabra *''wages,''* como no sea la palabra ''salario.''

Se llama la atención hacia el hecho de que la legislatura en la misma sesión de 1919 al aprobar la Ley No. 73 regulando el trabajo de mujeres y niños, se refirió al máximum de horas de trabajo para los empleados a jornal. Si el caso del apelante ha de regularse por la interpretación que damos a la intención de la legislatura a juzgar por la Ley No. 73 esta Corte no podría tener ninguna duda. Cuando la legislatura fijaba las horas de trabajo para las mujeres parece muy improbable que tuviera la intención de dar a entender que las mujeres que trabajan bajo una base de tiempo sólo debían estar empleadas ocho horas, mientras que las que trabajan por pesadas podrían emplearse indefinidaménte. Cualquier patrono de este modo podría fácilmente evadir las horas de trabajo para las mujeres y los niños.

La Ley No. 8 aprobada en noviembre 12, 1917, prescribe lo siguiente:

"En el caso de existir discrepancia entre los textos inglés y castellano de un estatuto de la Asamblea Legislativa de Puerto Rico, prevalecerá en la interpretación del mismo el texto en que se hubiere originado en cualquiera de las Cámaras, salvo en los casos siguientes: (*a*) si el estatuto fuere una traducción o adaptación de un estatuto de los Estados Unidos o de algún Estado o Territorio de los Estados Unidos, se dará preferencia al texto inglés sobre el texto castellano; (*b*) si el estatuto fuere de origen español se atenderá al texto castellano con preferencia al texto inglés; (*e*) si la cuestión de preferencia no pudiera resolverse por las reglas precedentes, se atenderá al texto castellano."

Sin considerar si esta Ley es reguladora y no imperativa para las cortes, sostenemos que la Ley de Salario Mínimo que consideramos fué adoptada de los Estados Unidos y que el texto inglés debe ser tenido en consideración al interpretar dicha Ley de Salario. Pero aún cuando esto fuese de otro modo, cuando las leyes se decretan en dos idiomas las cortes están además en libertad para examinar de nuevo uno u otro texto en busca de mayor claridad en casos dudosos. *Viterbo* v. *Friedlander,* 120 U. S. 707.

En el texto inglés no se usa ninguna otra palabra sino la de *"wages"* para definir el estipendio que recibe un trabajador. En el caso *in re Gurewitz,* 121 Fed. 982, donde un trabajador reclamaba preferencia por salarios ganados por trabajo de pesadas, encontramos la definición de la palabra *"wages,"* en cuyo caso la corte dice en la página 983:

"No hay nada ambiguo en cuanto al uso de la palabra '*wages*' en relación con esto, o sea por servicio prestado dentro de los tres meses anteriores a la institución de los procedimientos de quiebras. Significa la compensación convenida por servicios suministrados por los trabajadores, empleados o sirvientes del quebrado, aquellos que le han servido en capacidad de subordinados o amanuenses y quienes se supone que dependen de sus ahorros para sostenerse. Haya o no convenido su patrono en pagarles por hora, día, semana, mes o destajo o pieza es cosa enteramente inmaterial."

La corte continúa diciendo—

"Es increíble suponer que el Congreso tuviera la intención de establecer una diferencia en contra del vasto ejército de trabajadores que en las minas de carbón, fundiciones, fábricas de telas, y en casi todas las ramas de la industria se les paga no de acuerdo con el tiempo empleado, sino según el trabajo realizado."

Asimismo vemos que el Juez Presidente Sr. Shaw en el caso de *Thayer* v. *Mann,* 2 Cushing (Mass.) 374, interpretó de este modo el trabajo hecho por un trabajador para obtener preferencia de acuerdo con un estatuto de quiebras a pesar de que el obrero había llevado el trabajo a su casa y no estaba bajo la inspección directa del patrono. Véase también 29 A. & E. Enc., 2da. edición, pág. 1085.

Hemos visto en esta lectura aunque no tenemos la autoridad a la mano que un trabajador, a diferencia de un contratista independiente es aquel cuyo tiempo está a disposición de su patrono. Las cortes han interpretado de igual modo los estatutos relativos a exenciones. 18 Cyc. 1431 y también de acuerdo con la Ley de Compensaciones a Obreros, *Muncie Foundry & Machine Co.* v. *Thompson,* 123 N. E., pág. 196.

Llegamos por tanto a la conclusión en vista de la redacción de la ley de que hay un gran número de mujeres que trabajan por pesadas y por la otra legislación de la misma legislatura, que la intención de la legislatura fué proteger a todas las trabajadoras y hacer que fuese imposible que ningún patrono tuviera ninguna mujer sometida a sus órdenes que ganara menos de $6 semanales. Hubiera usado o no la legislatura la palabra "jornal," "salario," "*wages,*" c cuaquiera otra palabra, lo que ha de resolverse que tuvo presente fué que la mujer trabajadora tuviera al menos un salario lo más razonablemente posible para sostenerse, y que esto fué la intención de la legislatura al aprobar la Ley de junio 19, 1919.

El apelante también sostuvo e introdujo prueba con el

fin de sostener que esta no es una industria sino una ocupación agrícola. Creemos que convertir tabaco en rama en elaborado y demás cosas que varía su estado natural es necesariamente una industria o comercio y no una ocupación agrícola.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.