RAFAEL JULIO IRIZARRY, trabajando y haciendo negocios bajo el nombre de FAULTLESS EMBROIDERY COMPANY, ETC., demandantes, apelantes y apelados, *v.* PRUDENCIO RIVERA MARTÍNEZ, COMISIONADO DEL TRABAJO, demandado, apelado y apelante.

Núms. 7623 y 7624.—*Sometidos:* Enero 26, 1939. *Resueltos:* Abril 19, 1940.

*Arturo Ortiz Toro, Oscar Souffront* y *Amador Rivera Silva,* abogados de los demandantes, apelantes y apelados; *Hon. Procurador General George A. Malcolm (B. Fernández García, Ex-Procurador General,* en el alegato) y *E. Campos del Toro, Procurador General Auxiliar,* abogados del demandado, apelado y apelante.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los demandantes son dueños de talleres dedicados a diversas clases de trabajos de aguja, en los que emplean mujeres, mayores y menores de 18 años de edad. El 10 por ciento de los trabajos se verifica en las factorías o talleres de los respectivos demandantes, y el 90 por ciento restante lo hacen las trabajadoras en sus respectivos domicilios.

El día 9 de junio de 1919 (Leyes de 1919, pág. 201), la Asamblea Legislativa de Puerto Rico aprobó la Ley núm. 45, titulada "Ley estableciendo el mínimum de jornal para las mujeres trabajadores *(sic)*, y para otros fines," que dice así:

"Sección 1.—Será ilegal por parte de cualquier patrono que empleare mujeres, niñas inclusive, en ocupaciones industriales, comerciales y de servicio público, pagarles un salario menor del especificado en esta Sección, a saber: menores de 18 años a razón de cuatro (4) dólares semanales y mayores de esa edad a razón de seis (6) dólares semanales. Exceptúase de lo dispuesto en esta Sección las tres primeras semanas de aprendizaje. Las disposiciones de esta Ley no serán aplicables a la agricultura ni a las industrias agrícolas.

"Sección 2.—Cualquier patrono que pague a cualquier mujer, niñas inclusive, un salario menor del especificado en la Sección 1, será culpable de *misdemeanor,* y si resultare convicto, será penado con multa no mayor de cincuenta (50) dólares ni menor de cinco (5) dólares."

En 31 de mayo de 1937, el Comisionado del Trabajo de Puerto Rico dirigió un aviso a todos los patronos que emplean mujeres en trabajos industriales, comerciales o de servicio público, notificándoles que la Ley núm. 45, supra, está en vigor en Puerto Rico, no solamente en cuanto a los trabajos realizados en los talleres, si que también en cuanto a los realizados en los domicilios de las obreras; que de acuerdo con las disposiciones de dicha ley los demandantes vienen obligados a pagar a sus empleadas, tanto a las que trabajen en el taller como a las que lo hagan en sus domicilios, un salario mínimo de un dólar ($1.00) diario a las mayores de 18 años, y de cuatro dólares ($4.00) semanales a las menores de esa edad; y que las disposiciones de la citada ley tienen efecto retroactivo al día 1 de abril de 1937.

En junio 11 de 1937 los demandantes radicaron ante la Corte de Distrito de Mayagüez una demanda, Civil núm. 27,623, en solicitud de una sentencia declaratoria, en la que alegan que la Ley núm. 45, supra, es anticonstitucional y nula; que mientras la sentencia dictada por el Tribunal

Supremo en *El Pueblo de Puerto Rico* v. *Laurnaga & Co., Sucrs., S. en C.,* 32 D.P.R. 831, no sea revocada, dicha ley sigue siendo anticonstitucional y nula; que la referida ley no establece que sus disposiciones sean aplicables al trabajo a domicilio, y que si lo dispusiere sería nula en cuanto a ese extremo por ser un ejercicio irrazonable del poder soberano del estado y una intervención arbitraria con la libertad de contratación; que la citada ley es nula y anticonstitucional porque viola los derechos de libertad y propiedad garantizados por las Enmiendas quinta y catorce ·de la Constitución Nacional y el artículo 2 de la Ley Orgánica, porque establece un discrimen arbitrario en favor de las industrias agrícolas, porque es irrazonable al no tomar en consideración ni la habilidad de cada obrera ni la naturaleza de su trabajo, y porque sólo toma en consideración las necesidades de las obreras, ignorando las de los patronos. Piden los demandantes que se dicte sentencia declarando que la Ley núm. 45, supra, es nula; que los demandantes no están obligados a pagar un salario mínimo a las obreras que hacen su trabajo a domicilio; que la citada ley no puede en ningún caso tener efecto retroactivo; y que la sentencia que se dicte en este caso debe tener efecto prospectivo a partir de la fecha en ·que dicha sentencia sea firme y definitiva. En solicitud separada los demandantes pidieron la expedición de una orden ·de *injunction pendente lite.* La Corte de Distrito de Mayagüez ·expidió una orden requiriendo al demandado para que compareciese el 18 de junio de 1937 a mostrar las causas en ·virtud de las cuales no debiera decretarse el *injunction* solicitado. En junio 12, 1937, los mismos demandantes radicaron ante la misma corte el pleito núm. 27,624 en el que solicitaban un *injunction* contra el Comisionado del Trabajo prohibiéndole que pusiera en vigor la ley de salario mínimo. Trasladados ambos casos a la Corte de Distrito de San Juan, el 23 de junio de 1937 se celebró la vista de ambos ante dicho tribunal *in bank.* El 18 de agosto, 1937, la corte de distrito dictó sentencia declarando que la Ley núm. 45 de

1919 es constitucional y está en vigor en Puerto Rico; que dicha ley no es aplicable al trabajo a domicilio; y que la declaración de vigencia de dicha ley no tiene efecto retroactivo en cuanto pueda afectar derechos adquiridos al amparo de la decisión de *El Pueblo* v. *Laurnaga & Co.,* 32 D.P.R. 831. En la misma fecha la corte de distrito dictó sentencia declarando con lugar la demanda de *injunction* en cuanto al trabajo a domicilio. No conforme el Comisionado del Trabajo apeló de una y otra sentencias, radicando sus recursos bajo los números 7623 y 7624. Los consideraremos y resolveremos en una sola opinión.

Sostiene el demandado apelante que la corte inferior erró al declarar que la Ley núm. 45 no es aplicable al trabajo a domicilio; al decretar el *injunction* prohibiendo la aplicación de dicha ley al trabajo a domicilio; y al declarar que dicha ley sólo es aplicable desde la fecha en que sea firme la sentencia.

No aparece del récord que los demandantes hayan apelado de la sentencia en cuanto declara que la Ley núm. 45 está en vigor, es constitucional y debe ser aplicada al trabajo realizado en los talleres. Podríamos resolver que esa parte de la sentencia ha quedado consentida por los demandantes, pero tratándose de una ley de tanta importancia y que ha sido tan combatida, consideraremos primero la cuestión levantada por los demandantes en cuanto a la validez constitucional de dicha ley, antes de considerar los señalamientos de error del Comisionado apelante.

El primer ataque contra la Ley núm. 45 de 1919 tuvo lugar en *El Pueblo* v. *Álvarez,* 28 D.P.R. 937, en el que por opinión unánime de esta Corte Suprema se resolvió que las disposiciones de dicha ley eran válidas y constitucionales y que la ley era aplicable al trabajo por ajuste o pesadas.

En *El Pueblo* v. *Porto Rican American Tobacco Company,* 29 D.P.R. 397, se sostuvo por segunda vez la constitucionalidad de la ley de salario mínimo y se decidió además que

sus preceptos eran aplicables no sólo al trabajo por horas, si que también al realizado por ajuste.

Al plantearse por tercera vez la misma cuestión, en el caso de *El Pueblo* v. *Laurnaga & Co.,* 32 D.P.R. 831, esta Corte Suprema, sintiéndose obligada a seguir la decisión de la Corte Suprema Federal en *Adkins* v. *Children's Hospital,* 261 U. S. 525, 67 L. Ed. 785, resolvió:

". . . La Corte Suprema de los Estados Unidos, en el caso de *El Pueblo* v. *Adkins,* por un voto de cinco contra tres, ha considerado que la obtención de un jornal mínimo no es una cuestión de salud pública. Cualesquiera que sean las opiniones personales de los jueces de esta corte, estamos necesariamente obligados por la decisión de la Corte Suprema de los Estados Unidos.

"Por tanto debe resolverse que la Sección 1a. de la Ley Núm. 45 de 1919 es anticonstitucional y nula."

Transcurrieron catorce años desde abril 9, 1923, fecha de la decisión del caso de *Adkins* v. *Children's Hospital,* supra, hasta marzo 29 de 1937 en que la cuestión de la validez constitucional de una ley del Estado de Washington que fijaba el salario mínimo de mujeres y menores fué considerada y resuelta por el Tribunal Supremo Federal, en el caso de *West Coast Hotel Company* v. *Parrish,* 300 U. S. 379, 81 L. Ed. 703. Aceptando como más sabias y más liberales las opiniones de los jueces disidentes Taft y Holmes en el caso de *Adkins,* supra, la Corte Suprema, por mayoría y por voz de su Juez Presidente Hughes sostuvo la validez constitucional del estatuto de Washington y revocó su decisión en el caso de *Adkins,* diciendo:

"El principio que debe controlar nuestra decisión no es dudoso. La disposición constitucional invocada es la cláusula del debido proceso de ley de la Enmienda Catorce que gobierna a los Estados, como la cláusula del debido proceso invocada en el caso de Adkins era aplicable al Congreso. En cada caso la violación alegada por los que atacan la regulación del salario mínimo de las mujeres es la privación de la libre contratación. ¿En qué consiste esa libertad? La Constitución no habla de la libertad para contratar. Habla de libertad y prohibe la privación de la libertad sin el debido proceso

de ley. Al prohibir esa privación la Constitución no reconoce una absoluta e incontrolable libertad. La libertad en cada una de sus fases tiene su historia y su significado. Pero la libertad garantizada es la libertad en una organización social que requiere la protección de la ley contra los peligros que amenaza la salud, la seguridad, la moral y el bienestar del pueblo. La libertad bajo la Constitución está pues necesariamente sujeta a las restricciones del debido proceso, y una regulación que es razonable en relación con el sujeto de la misma y que es adoptada en interés de la comunidad constituye un debido proceso. Esta limitación de la libertad en general gobierna la libertad de contratar en particular. Hace más de veinticinco años, después de referirnos a los casos en los cuales la libertad garantizada por la Enmienda Catorce había sido ampliamente descrita, expusimos el principio aplicable en estas palabras:

" 'Pero se reconoció en los casos citados, así como en muchos otros, que la libertad de contratar es un derecho limitado y no absoluto. No existe absoluta libertad para hacer lo que uno quiera, ni para contratar como a uno le plazca. La garantía de libertad no retira de la supervisión legislativa ese amplio campo de actividad que consiste en la celebración de contratos, ni niega al gobierno el poder de imponer salvaguardias restrictivas. La libertad implica la ausencia de trabas arbitrarias, no la inmunidad contra reglamentaciones y prohibiciones razonables impuestas en beneficio de la comunidad.' *Chicago, B. & Q. R. Co.* v. *McGuire*, 219 U. S. 549, 567."

Y después de analizar los casos en que la llamada libertad de contratación ha sido constitucionalmente restringida mediante legislación, siguió diciendo la Corte Suprema:

"Esta lista de precedentes y los principios en ellos aplicados hicieron creer a los jueces que disintieron en el caso de Adkins que era imperativo sostener el estatuto sobre salario mínimo. La validez de la distinción que hizo la corte entre un salario mínimo y un máximo de horas, como limitación de la libertad contractual fué especialmente atacada. 261 U. S. 564. Ese ataque persiste y no puede ser contestado satisfactoriamente. Como observó el Juez Presidente Taft: 'En la absoluta libertad de contratación un término es tan importante como el otro, pues ambos entran por igual en la consideración dada y recibida, una restricción en cuanto a uno no es mayor en esencia que el otro y es de la misma clase. Uno es el multiplicador y el otro el multiplicando.' Y el Juez Sr. Holmes, aun cuando reconoció que 'las distinciones de la ley son distinciones

de grado,' no pudo 'percibir diferencia alguna en la clase o grado de interferencia contra la libertad, que es lo único en que estamos interesados, entre un caso y otro. El convenio queda igualmente afectado sea cual fuere la mitad que se regule.' . . .

"Las manifestaciones del Juez Holmes en el caso de Adkins son pertinentes: 'Este estatuto no obliga a nadie a pagar algo. Simplemente prohibe el empleo por jornales más bajos que los fijados como requisito mínimo para la salud y para una vida justa. Es seguro el asumir que las mujeres no han de ser empleadas aun por los salarios más bajos permitidos, a menos que se los ganen, o a menos que el negocio del patrono pueda mantener el gasto. En pocas palabras, la ley por su carácter y funcionamiento es igual a centenares de las llamadas leyes de policía cuya validez ha sido sostenida.' . . . ¿Qué puede haber más íntimamente relacionado con el interés público que la salud de las mujeres y la protección de éstas contra patronos poco escrupulosos y explotadores? ¿Y si la protección de las mujeres es un fin legítimo del ejercicio del poder estatal, cómo puede decirse que el requisito del pago de un salario mínimo razonablemente fijado con el fin de hacer frente a las necesidades de la existencia no es un medio admisible para alcanzar tal fin? La Asamblea Legislativa del Estado tenía claramente el derecho a considerar la situación de las mujeres empleadas, el hecho de que ellas están en la clase que recibe menos paga, que su poder para contratar es relativamente débil, y que son víctimas fáciles de aquellos dispuestos a tomar ventaja de sus precarias circunstancias. . . .

"Existe una razón adicional y poderosa que la reciente experiencia económica ha hecho surgir con fuertes relieves. La explotación de una clase de trabajadores que se encuentran en una posición desigual en cuanto al poder para contratar y que por esa razón están relativamente indefensos contra la negativa de un jornal de vida (*living wage*), es no solamente perjudicial a su salud y bienestar si que también impone un gravamen directo a la comunidad para su sostenimiento. Lo que estos trabajadores pierden en sus salarios los contribuyentes se ven obligados a pagar. El justo costo de la vida tiene que ser sufragado."

Es ésta la primera oportunidad que se nos ha presentado para considerar de nuevo la cuestión, después de la decisión del caso de *West Coast Hotel Co.* v. *Parrish*, supra. Habiéndose revocado en dicho caso la decisión en el de *Adkins*, que

nos vimos obligados a seguir al decidir el de *El Pueblo* v. *Laurnaga,* supra, es nuestro deber aceptar y aplicar al caso de autos la jurisprudencia sentada por el caso de *Parrish*, resolver que la Ley núm. 45 de junio 9 de 1919 es constitucionalmente válida y está en vigor, y revocar el caso de *El Pueblo* v. *Laurnaga,* 32 D.P.R. 831.

■ La segunda cuestión que se somete a nuestra decisión es: ¿Son aplicables las disposiciones de las secciones 1 y 2 de la Ley núm. 45, supra, a las mujeres que trabajan a domicilio?

Aceptando como válida y convincente la contención de los patronos demandantes, el tribunal inferior resolvió que la referida ley no es de aplicación al trabajo a domicilio, dando como razones para tal decisión las siguientes:

"La ley, como hemos visto, guarda absoluto silencio sobre el particular. Preciso es recurrir a los cánones de interpretación para determinar la verdadera intención del legislador.

"De acuerdo con la evidencia en este caso practicada, el tallerista entrega el material a los subagentes, que lo distribuyen entre las distintas obreras que han de realizar el trabajo. El subagente le señala el precio por unidad. La obrera, juntamente con el material, recibe el modelo a que ha de conformar su trabajo, pero ninguna otra relación tiene con el dueño del taller excepto entregarle su trabajo y recibir el precio del mismo. No se le fija tiempo determinado dentro del cual deba entregar el trabajo, dándose con frecuencia el caso de que una misma persona trabaja para varios talleres al mismo tiempo.

"　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

"Veamos ahora cómo operaría la ley si tratásemos de aplicarla al trabajo a domicilio: el tallerista A, a través de su agente, entrega a una obrera trabajo que razonablemente puede hacer en el taller en el curso de una semana. La obrera lleva el trabajo a su casa, y bien por causa de enfermedad, inexperiencia, o porque realice trabajos para los talleristas B y C al mismo tiempo, no entrega el trabajo de A al terminar la semana, sino dos semanas después. ¿Cuánto debe pagarle A de acuerdo con la ley? A no puede hacer otra cosa que pagarle a razón de dos semanas, porque ella alegaría que trabajó durante dos semanas, y la ley es inflexible al fijar el montante del salario.

"Pasemos a otro caso. Una obrera mayor de diez y ocho (18) años recibe material que razonablemente puede hacer en una semana. Lo lleva a su domicilio, pero por cualquier razón que podemos imaginar, no hace ella el trabajo, sino que lo pasa a su hija o a cualquier otra mujer menor de diez y ocho (18) años, que, como hemos visto, su salario mínimo es de cuatro (4) dólares semanales. Terminada la labor, la obrera que lo recibió lo devuelve como hecho por ella, y el patrono, que no tiene medios de probar lo contrario, tiene que pagarle a razón de (6) pesos semanales, por tratarse de una mujer mayor de diez y ocho (18) años, o de lo contrario pagar la consiguiente multa. Indudablemente que no pudo ser ésta la intención del legislador. Esta interpretación no sólo resulta absurda y como tal debe ser rechazada, sino que de aceptarla y declarar la ley extensiva al trabajo a domicilio, tendríamos que declararla inconstitucional por privar al patrono de su propiedad sin el debido procedimiento de ley.

"Cuando al interpretar una ley nos confrontamos con dos posibles interpretaciones—una que la haría inconstitucional o, por lo menos, haría dudar seriamente de su constitucionalidad, y otra que no afectaría la validez de la ley—es la ineludible obligación del tribunal salvar la ley, y para ello debe desechar aquella interpretación que la haga inconstitucional o que pueda crear serias dudas sobre su constitucionalidad y adoptar aquella que no afecte la validez de la ley. (Citas.)

"Los distintos casos a que daría lugar la interpretación de la ley si resolviésemos que es aplicable al salario a domicilio, demuestran más allá de toda duda razonable que la ley, de ser así interpretada, sería inconstitucional, pues equivale a autorizar a las obreras a que se apropien el dinero de sus patronos y a obligar a éstos a dejarse explotar so pena de ser perseguidos criminalmente. No se necesita ningún esfuerzo mental ni grandes conocimientos de derecho constitucional para darse cuenta de la arbitrariedad e injusticia que resultaría de tal interpretación."

"  *        *        *        *        *        *        *

"Hemos llegado a la conclusión de que nuestra ley de salario mínimo no incluye en sus disposiciones al trabajo a domicilio. Si el Comisionado del Trabajo intentare aplicar dicha ley a tal modalidad del trabajo, no actuaría amparado por ley alguna, sus actos no serían los actos oficiales de un funcionario público, y siendo ello así, el Comisionado, sus agentes y subalternos no estarían haciendo cumplir (*enforcing*) un estatuto público en beneficio del público. *Durlach Bros., Inc.* v. *Domenech, Tesorero,* 47 D.P.R. 654.

"Fácil es comprender que al tratar el Comisionado del Trabajo de poner en vigor la ley en relación con el trabajo a domicilio, necesariamente afectaría derechos de propiedad de los demandantes. Tampoco se nos oculta la necesidad del auto de *injunction* permanente que solicitan los demandantes, a fin de impedir que el demandado los obstaculice en el derecho que tienen de libre contratación en lo que al trabajo a domicilio respecta. Resultaría completamente académica la sentencia y obligaría a los demandantes a instituir procedimientos adicionales para hacer efectivos sus derechos, si no concediéramos de una vez el *injunction* solicitado. Se impediría así al demandado llevar- a efecto su propósito, ya manifestado, de denunciar a los demandantes por una supuesta violación de la ley al ejercitar su derecho de contratación en relación con el trabajo a domicilio. No estamos haciendo uso del *injunction* para impedir que se persiga por infracción a un estatuto penal porque si bien nuestra ley de salario mínimo puede considerarse como tal, el trabajo a domicilio no está comprendido dentro de las disposiciones de dicha ley y por lo tanto no infringe dicho estatuto cualquier actuación de los demandantes relacionada con dicho trabajo.

"Por consiguiente, procede también dictar un auto de *injunction* permanente para impedir que el Comisionado del Trabajo, por sí o por sus agentes subalternos o empleados, denuncie o en alguna forma obstaculice a los demandantes en sus contratos de trabajo a domicilio. Véanse la sección 8 de la Ley Uniforme de Sentencias o Decretos Declaratorios y muy especialmente la monografía que aparece en 101 A.L.R. 689, y el caso de *Gully* v. *Interstate Natural Gas Co.*, 82 F. (2d.)145.''

No nos convence la argumentación del tribunal inferior para sostener la inaplicabilidad de la ley de salario mínimo al trabajo a domicilio. ·

El propósito claro y evidente de dicha ley es proteger a todas y cada una de las mujeres que se ven obligadas a trabajar en ocupaciones industriales o comerciales, exigiendo que se les pague un salario mínimo que el legislador considera adecuado y suficiente para garantizarles un *standard* de vida saludable y feliz. No establece la ley distinción alguna entre la obrera que trabaja en el taller bajo la inspección directa del patrono y la que hace su trabajo en el hogar. *Ubi lex non distinguit, nec nos distinguere debemus*

El lenguaje del estatuto es tan claro que no es posible dudar que la intención del legislador fué la de incluir en sus disposiciones a todas las obreras, no importa el sitio donde éstas realicen su trabajo. No encontramos en la argumentación que se hace en apoyo de la inaplicabilidad de la ley al trabajo a domicilio, justificación alguna para que sostengamos que la intención del legislador fué negar la protección estatutaria y dejar en la más absoluta indefensión al noventa por ciento de las mujeres que se ganan la vida en las diversas industrias de aguja. Las mismas razones aducidas en apoyo de la validez constitucional del estatuto en cuanto al trabajo en el taller—defensa de la salud de las obreras, mejores condiciones de vida y protección contra la explotación patronal—pueden aducirse para sostener que el estatuto es y debe ser aplicable al trabajo hecho en el domicilio.

La corte inferior basa su argumentación en una serie de presunciones contrarias, a nuestro juicio, a las que establece y reconoce la ley. Presume, según se desprende de los ejemplos que pone para demostrar cómo funcionaría la ley si se aplicara al trabajo a domicilio, que la obrera a quien se ha de entregar el trabajo que razonablemente puede hacer en una semana, por enfermedad, inexperiencia u otros motivos no va a devolver el trabajo al finalizar la semana y sí dos semanas después; y que va a exigir que se le pague por dos semanas de trabajo cuando en realidad sólo ha trabajado una. Todo ello equivale a presumir que las obreras no van a cumplir con su deber y que van a tratar de defraudar a sus patronos, lo que es contrario a la regla de derecho de que el fraude nunca se presume y a las presunciones legales de que toda persona cuida de sus propios asuntos con celo ordinario y cumple sus compromisos y deberes. Debemos reconocer que existe la posibilidad de que alguna o algunas obreras traten de defraudar al patrono, cobrándole por tiempo no invertido en el trabajo, pero esa posibilidad no es suficiente para que se prive a las demás obreras cumplidoras de sus obligaciones de los beneficios de una

legislación social y humana aprobada para su protección y bienestar.

El otro ejemplo, el de la obrera mayor de 18 años que se presume va a permitir que el trabajo que ella se comprometió a hacer lo haga una mujer menor de 18 años, para ganarse así fraudulentamente la diferencia en el tipo de salarios, es aún menos convincente y está sujeto a las mismas objeciones que el primero. Además, aceptando que en algunos casos suceda lo que la corte inferior señala como un peligro tan grave que equivaldría a privar al patrono de su propiedad sin el debido proceso de ley, ¿en qué se perjudica el patrono si el trabajo ha sido hecho a su debido tiempo y a su satisfacción, por el hecho de que la que en realidad hizo el trabajo tenía menos de 18 años de edad? La posibilidad de que eso ocurra no justificaría la no aplicación del estatuto al trabajo a domicilio.

Los obstáculos y dificultades que a juicio de los patronos demandantes hacen imposible la aplicación de la ley al trabajo a domicilio, son más aparentes que reales y no son en manera alguna insuperables. Como dijo el eminente Juez Holmes en el caso de *Adkins,* ''es seguro el asumir que las mujeres no han de ser empleadas aun por los salarios más bajos permitidos, a menos que se los ganen, o a menos que el negocio del patrono pueda mantener el gasto.'' El patrono tiene, a nuestro juicio, sin necesidad de establecer una inspección o supervisión personal de cada una de las trabajadoras a domicilio, amplios y fáciles medios de comprobar si una obrera determinada se ha ganado o no el salario convenido entre las partes o el salario mínimo fijado por el estatuto. Mediante una simple operación matemática se puede determinar con exactitud la cantidad promedia de trabajo que hace cada día o cada semana una obrera que trabaja en el taller. Por ejemplo, un taller que emplea cien obreras durante seis días de la semana y produce 10,000 pañuelos semanales, tiene un promedio de producción de 100 pañuelos por obrera por semana y un promedio de 16.66

pañuelos por obrera por día. Si a esa obrera que en el taller produce 16.66 pañuelos por día ó 100 por semana el patrono está obligado a pagarle un salario no menor que el que fija la ley, no vemos razón alguna por la cual no deba compensarse en igual forma y medida la misma labor cuando es realizada a tiempo y a satisfacción del patrono por una obrera en su domicilio. Sostener lo contrario equivaldría a establecer un injustificado discrimen contra la obrera competente, honrada y cumplidora de su deber, que por razones especiales se ve obligada a permanecer en su hogar, obligándola a trabajar por menos del precio legal de su trabajo y dejándola expuesta a convertirse en víctima propiciatoria de patronos, agentes e intermediarios, cuyas ganancias aumentan a medida que los salarios disminuyen. El patrono puede protegerse contra la obrera a domicilio que no rinda una labor igual a la que rinde su compañera en el taller o que trata en alguna forma de defraudarle, de la misma manera que se protegería si no existiese la ley de salario mínimo, retirándola de su empleo o negándose a pagarle lo que en justicia no le corresponda.

No se ha llamado nuestra atención hacia ley alguna que prohiba el trabajo por ajuste o por piezas en las industrias de la aguja. Las dificultades que se han señalado y que aparentan ser un obstáculo para la aplicación de la ley al trabajo a domicilio, podrían ser obviadas fácilmente si los patronos, las obreras y el Comisionado del Trabajo encargado de velar por el cumplimiento de la ley, actuando todos de buena fe y con el firme propósito de dar vida al estatuto, fijasen la cantidad de trabajo que puede y debe realizar una obrera a domicilio en un día de trabajo, en cada una de las distintas clases de labores, para ganarse y tener derecho a reclamar y recibir el salario mínimo fijado por el estatuto. La realización y entrega de esa cantidad de trabajo así fijada sería la mejor evidencia del tiempo invertido por cada obrera. Ésta recibiría el salario mínimo que le garantiza el estatuto; y el patrono tendría una garantía más eficaz que la que pueda

darle el reloj o el ojo del inspector en el taller. Pongamos un último ejemplo: a una obrera a domicilio se le entrega material para hacer 100 pañuelos en una semana, que es el promedio de producción en el taller. La entrega de los 100 pañuelos terminados—no importa cuándo se verifique—será la mejor demostración de que la obrera invirtió 6 días en hacer el trabajo, y eso le dará derecho a recibir el salario mínimo.

Por las razones expuestas somos de opinión que la corte inferior erró al resolver que la ley no es aplicable al trabajo a domicilio y que la sentencia recurrida debe ser modificada en cuanto a ese pronunciamiento.

■ La última cuestión que debemos considerar y resolver es: ¿Desde qué fecha debe surtir efecto la declaración de que la ley de salario mínimo es constitucionalmente válida y aplicable tanto al trabajo en el taller como al trabajo a domicilio?

Sostiene la representación del Comisionado demandado que la ley debe considerarse en vigor desde el 1 de abril de 1937, a virtud de la sentencia dictada por la Corte Suprema Federal en *West Coast Hotel Co.* v. *Parrish,* revocando el caso de *Adkins,* que sirvió de base a esta Corte Suprema para su decisión en el caso de *El Pueblo* v. *Laurnaga,* supra.

Sosteniendo la contención de los demandantes la corte sentenciadora resolvió "que la declaración de estar vigente dicha ley no tiene efecto retroactivo en cuanto pueda afectar contratos y derechos adquiridos al amparo de la decisión de *El Pueblo* v. *Laurnaga & Co., S. en C.,* supra."

La decisión de la corte inferior en cuanto a ese extremo se ajusta a derecho. Como regla general, cuando una decisión de un tribunal superior es revocada, la revocación implica que la decisión revocada nunca existió. No puede por tanto alegarse ningún derecho como adquirido al amparo de la decisión revocada. La regla tiene sin embargo una excepción bien establecida y reconocida por los tribunales federales y estatales, y es la siguiente:

"Cuando un estatuto ha sido interpretado en determinado sentido por el tribunal más alto del estado y al amparo de esa interpretación se han celebrado contratos y se han adquirido derechos, tales contratos y derechos adquiridos no pueden ser perjudicados por un cambio en la interpretación mediante una subsiguiente decisión." 7 R.C.L. 1010.

La aplicación de dicha regla al caso de autos nos parece ser justa y equitativa. Las partes actuaron y contrataron al amparo de la decisión de esta corte en el caso de *Laurnaga*, por la que se declaró inválida y anticonstitucional la ley que fija el salario mínimo. Al celebrar el contrato de trabajo, ni los patronos ni las obreras tuvieron en mente el salario mínimo fijado por una ley que había sido anulada por una sentencia del más alto tribunal insular. Sería injusto bajo tales circunstancias obligar ahora a los patronos a pagar la diferencia, si alguna hubiere, entre los salarios actualmente pagados y los fijados por la ley. Véanse: 85 A.L.R. 262; y 43 F. (2d) 513, 516.

Por las razones expuestas *debe modificarse la sentencia dictada en el recurso núm. 7623 en cuanto al pronunciamiento de que la Ley de Salario Mínimo no es aplicable al trabajo a domicilio, resolviendo en su lugar que dicha ley es aplicable a dicho trabajo a domicilio, con el mismo vigor y efecto que lo es al trabajo en talleres o factorías; y así modificada debe confirmarse en todas sus partes.*

Como consecuencia de la decisión de que la ley es aplicable al trabajo a domicilio, *debe declararse con lugar el recurso núm. 7624 y revocarse la sentencia de injunction permanente que contra el Comisionado del Trabajo dictó la corte inferior en 18 de agosto de 1937.*

El Juez Asociado Sr. De Jesús no intervino.