928

F. Olazábal & Compañía, S. en C., peticionaria, v. La Corte de Distrito de Bayamón, por su Juez Hon. Emilio S. Belaval, demandada.

Núm. 6.—*Sometido:* Junio 1, 1944. *Resuelto:* Julio 10, 1944.

*Dubón & Ochoteco* y *Rivera Zayas & Rivera Cestero,* abogados de la peticionaria; *Ortiz Toro & Ortiz Toro* y *H. Ramos Mimoso,* abogados de los interventores, demandantes en el pleito principal.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

La cuestión primordial envuelta en este recurso es resolver si, como sostuvo la corte inferior esta Corte Suprema " . . . no tenía autoridad para fijar el carácter retroactivo o prospectivo de la aplicación en Puerto Rico de la decisión en el caso de *West Coast Hotel* v. *Parrish,* 300 U.S. 379, según lo hizo en el caso de *Irizarry* v. *Rivera Martínez,* 56 D.P.R. 532." Escuetamente expuestos los hechos son los siguientes:

Elisa Torres y otras trabajadoras, radicaron ante la Corte Municipal de Bayamón una demanda al amparo de la Ley núm. 45, aprobada el 9 de junio de 1919 (pág. 201) sobre salario mínimo para mujeres, contra F. Olazábal & Compañía, S. en C. en reclamación de $8,157.40, por concepto de salarios devengados y no pagados por labores de costura a domicilio; la demandada formuló excepciones previas y una moción eliminatoria contra la demanda, solicitando en la referida moción que se eliminasen todas las reclamaciones por concepto de salarios devengados con anterioridad al 19 de abril de 1940 por el fundamento de haber sido realizadas dichas la-

bores por contratos celebrados cuando no regía en Puerto Rico dicha ley sobre salario mínimo. La corte municipal declaró con lugar la moción eliminatoria y para revisar esta actuación las demandantes radicaron una petición de *certiorari* ante la Corte de Distrito de Bayamón y expedido el auto y oídas las partes la corte dictó sentencia([1]) por la que dejó sin efecto la resolución dictada por la corte municipal y devolvió el caso a dicha corte para ulteriores procedimientos. Fué entonces que F. Olazázal & Compañía, S. en C. radicó ante esta corte una petición de certiorari bajo la Ley núm. 32 de 1943 (pág. 85) y expedimos el auto por estar envuelta una cuestión de gran interés público.

La historia judicial en cuanto a la constitucionalidad de la Ley núm. 45 de 1919 es bien conocida. En el caso de *El Pueblo* v. *Álvarez*, 28 D.P.R. 937 (1920) se resolvió, por primera vez, que la ley era constitucional y aplicable al trabajo realizado por pesadas; en el de *El Pueblo* v. *P. R. American Tobacco Co.*, 29 D.P.R. 397 (1921), se ratificó su constitucionalidad y resolvió que era aplicable al trabajo realizado por ajuste. Tres años después esta corte, sintiéndose obligada a seguir la decisión de la Corte Suprema Nacional en el caso de *Adkins* v. *Children's Hospital*, 261 U. S. 525, resolvió en el de *El Pueblo* v. *Laurnaga & Co.*, 32 D.P.R. 831 (1924), que la ley era anticonstitucional y nula.

El 29 de marzo de 1937—la fecha es importante a los efectos del caso de autos—la Corte Suprema Nacional resolvió el caso de *West Coast Hotel Company* v. *Parrish*, 300 U. S. 379, a virtud del cual revocó el de *Adkins*, supra, y sostuvo la validez constitucional de una ley del Estado de Washington que fijaba el salario mínimo para las mujeres y menores de edad. Surgió entonces en Puerto Rico el caso de *Irizarry* v. *Rivera Martínez*, 56 D.P.R. 519 (1940) en el cual estaban envueltas, no sólo la cuestión de la constitucionalidad de la

([1])Es obvio que la corte inferior lo que debió haber dictado en este caso es una resolución y no una sentencia.

Ley 45 de 1919, sino también si era aplicable al trabajo a domicilio realizado por las mujeres. La Corte de Distrito de San Juan *in bank* había resuelto, 1, que la ley era constitucional de acuerdo con el caso de *West Coast Hotel* v. *Parrish,* supra; 2, que la ley no era aplicable al trabajo a domicilio, y 3, que la declaración de estar vigente la ley no tiene efecto retroactivo en cuanto pueda afectar contratos y derechos adquiridos al amparo de la decisión de *El Pueblo* v. *Laurnaga & Co.,* supra. En apelación esta corte confirmó la sentencia en cuanto a los puntos 1 y 3 y la modificó en cuanto al segundo, resolviendo en su lugar que la ley ''es aplicable al trabajo a domicilio con el mismo vigor y efecto que lo es el trabajo en talleres o factorías'' y como consecuencia revocó el caso de *El Pueblo* v. *Laurnaga,* supra.

La contención de la peticionaria F. Olazábal & Compañía, es que habiendo quedado en suspenso la efectividad de la Ley núm. 45 de 1919, desde el año 1924 en que se resolvió el caso de *Pueblo* v. *Laurnaga,* hasta el 19 de abril de 1940 en que se resolvió el de *Irizarry* v. *Rivera Martínez,* los contratos celebrados por ella con sus trabajadoras a domicilio, aun cuando no se ajusten a la Ley núm. 45 de 1919, son válidos, ya que de acuerdo con el propio caso de Irizarry se sostuvo que la vigencia de nuevo de dicha ley no tenía efecto retroactivo. Empero la corte inferior sostuvo: ''Que la Ley 45 de 9 de junio de 1919, volvió a entrar en vigor el día *29 de marzo de 1937,* fecha en que se rindió la decisión por la Corte Suprema de Estados Unidos del caso .de *West Coast Hotel* v. *Parrish* . . .'' y ''Que por tratarse de una cuestión constitucional federal la Corte Suprema de Puerto Rico *no tenía autoridad* para fijar el carácter retroactivo o prospectivo de la aplicación de esta decisión en Puerto Rico, según lo hizo en el caso de *Irizarry* v. *Rivera Martínez'',* supra (bastardillas nuestras).

En el caso de *Irizarry* v. *Rivera Martínez,* supra, al tratar esta cuestión, a las páginas 532–3, se dijo lo siguiente:

"La última cuestión que debemos considerar y resolver es: ¿Desde qué fecha debe surtir efecto la declaración de que la Ley de salario mínimo es constitucionalmente válida y aplicable tanto al trabajo en el taller como al trabajo a domicilio?

"Sostiene la representación del Comisionado demandado que la ley debe considerarse en vigor desde el 1 de abril de 1937, a virtud de la sentencia dictada por la Corte Suprema Federal en West Coast Hotel Co. v. Parrish, revocando el caso de Adkins, que sirvió de base a esta Corte Suprema para su decisión en el caso de El Pueblo v. Laurnaga, supra.

Sosteniendo la contención de los demandantes la corte sentenciadora resolvió 'que la declaración de estar vigente dicha ley no tiene efecto retroactivo en cuanto pueda afectar contratos y derechos adquiridos al amparo de la decisión de El Pueblo v. Laurnaga & Co., S. en C., supra.'

"La decisión de la corte inferior en cuanto a ese extremo se ajusta a derecho. Como regla general, cuando una decisión de un tribunal superior es revocada, la revocación implica que la decisión revocada nunca existió. No puede por tanto alegarse ningún derecho como adquirido al amparo de la decisión revocada. La regla tiene sin embargo una excepción bien establecida y reconocida por los tribunales federales y estatales, y es la siguiente:

" 'Cuando un estatuto ha sido interpretado en determinado sentido por el tribunal más alto del estado y al amparo de esa interpretación se han celebrado contratos y se han adquirido derechos, tales contratos y derechos adquiridos no pueden ser perjudicados por un cambio en la interpretación mediante una subsiguiente decisión.' 7 R.C.L. 1010.

"La aplicación de dicha regla al caso de autos nos parece ser justa y equitativa. Las partes actuaron y contrataron al amparo de la decisión de esta corte en el caso de Laurnaga, por la que se declaró inválida y anticonstitucional la ley que fija el salario mínimo. Al celebrar el contrato de trabajo, ni los patronos ni las obreras tuvieron en mente el salario mínimo fijado por una ley que había sido anulada por una sentencia del más alto tribunal insular. Sería injusto bajo tales circunstancias obligar ahora a los patronos a pagar la diferencia, si alguna hubiere, entre los salarios actualmente pagados y los fijados por la ley. Véanse: 85 A.L.R. 262; y 43 F. (2d) 513, 516."

La corte inferior en su opinión sostiene que esta conclusión es errónea porque al dictaminar esta corte sobre una

cuestión constitucional, al amparo de nuestra Carta Orgánica, no actúa como lo hace una corte estatal de última instancia sobre leyes de carácter substantivo, sino que actúa como una corte territorial intermedia cuyas decisiones pueden ser revisadas y revocadas, tanto por la Corte de Circuito de Apelaciones, como por la Corte Suprema de los Estados Unidos. Sostuvo, por tanto, que ni la Corte de Distrito de San Juan ni esta Corte Suprema podían darle efecto retroactivo o prospectivo a la decisión del caso de *Parrish,* supra, y que tan pronto el mismo fué resuelto el 29 de marzo de 1937 implícitamente quedó revocado el caso de *Pueblo* v. *Laurnaga,* (²) y la ley de salario mínimo era obligatoria para todos desde esa fecha.

La peticionaria, por su parte, afronta y contesta en su alegato la cuestión según planteada y resuelta por la corte

---

(²)La Corte de Distrito de San Juan al resolver el caso de *Irizarry* v. *Rivera Martínez* en agosto 18, 1937, expresamente dijo:

"Por consiguiente, el caso de Laurnaga se halla en manifiesto conflicto con el de *West Coast Hotel Co.* v. *Parrish,* resuelto por el Tribunal Supremo de los Estados Unidos. Mas, como este último tribunal es de jerarquía superior a nuestra Corte Suprema, claro está que el conflicto no puede legalmente subsistir y por lo tanto, el caso de Laurnaga ha quedado implícitamente revocado por la última decisión del Tribunal Supremo de los Estados Unidos.

"Empero alegan los demandantes que para que reviva la Ley de Salario Mínimo, es necesario que el caso de Laurnaga sea revocado por nuestro Tribunal Supremo o por la Corte de Circuito de Apelaciones, Primer Circuito.

"Sostienen además los demandantes, que mientras dicho caso no sea de ese modo revocado, el precedente establecido es obligatorio para nosotros y en su consecuencia que no podemos declarar constitucional la Ley de Salario Mínimo por impedírnoslo la referida decisión.

"En cuanto al primer punto, bastaría replicar que lo más incluye lo menos y que si el Tribunal Supremo de Puerto Rico y la Corte de Circuito de Apelaciones pueden revocar el caso de Laurnaga, con mucha más autoridad puede hacerlo el Tribunal Supremo de los Estados Unidos que es superior a uno y otro, tanto más cuanto se trata, como en este caso, de un tribunal territorial como es la Corte Suprema de Puerto Rico. (*Choate* v. *Spencer,* 20 L.R.A. 242-430.)

" * * * * * * * *

"Pasando ahora al segundo punto, es decir, a la aseveración que hacen los demandantes al efecto de que el caso de Laurnaga nos obliga a que no podemos ir contra su doctrina, bastaría decir que como corte de jurisdicción original general no debemos actuar como autómatas en la aplicación de la ley y en el estudio de los precedentes."

inferior citando, 1, lo dicho por esta corte en el caso de *Irizarry,* supra, y 2, la jurisprudencia general sobre el hecho de que los tribunales de última instancia estatales al revocar anteriores decisiones suyas pueden establecer el efecto prospectivo de la última decisión cuando ésta pueda afectar contratos y derechos adquiridos a virtud de sus decisiones anteriores, ya que, en el ejercicio de este poder no hay envuelta cuestión constitucional alguna, según resolvió la Corte Suprema federal en el caso de *Great Northern Railway Company v. Sunburst Oil & Refining Company,* 287 U.S. 358.

Para sostener su conclusión la única autoridad citada por la corte inferior es el caso de *González* v. *Bowie,* 123 F.(2d) 387 en relación con el de *Calaf* v. *González,* 127 F.(2) 935. La Corte Federal de Puerto Rico había declarado que la Ley de Normas Razonables del Trabajo (Fair Labor Standards Act) no era aplicable a los obreros que trabajaban en las centrales durante la época muerta. En el caso de *Bowie,* supra, la Corte de Circuito revocó dicha decisión. Surgió entonces el caso de *Calaf* v. *González* y se alegó ante la Corte de Circuito que la opinión en el caso de *Bowie,* supra, debía aplicarse prospectivamente porque los demandados confiaron en la regla de propiedad establecida por la corte inferior, y en cuanto a esto resolvió la Corte de Circuito a la página 938:

"Consideramos esta posición insostenible. Con anterioridad a nuestra decisión en dicho caso (el de Bowie) no se había hecho interpretación alguna en cuanto a la aplicabilidad de la Ley sobre Normas Razonables de Trabajo a hechos de esta clase excepto la decisión de la corte de distrito. La corte de distrito no es, en sentido alguno, una corte de última instancia. Aunque las sentencias de dicha corte son merecedoras de gran peso, están sujetas a apelación y revocación. Esto es especialmente cierto en el caso de autos donde la controversia es sin duda una de interpretación estatutaria."

No vemos la similitud que pueda haber entre lo resuelto en el caso de *Calaf,* supra, y la situación legal planteada en el de autos. Ciertamente lo resuelto por la Corte de Distrito

federal de Puerto Rico en el caso de *Bowie* interpretando el alcance de la Ley sobre Normas Razonables del Trabajo no podía considerarse como regla de propiedad alguna ya que no se trataba de un caso revocando una decisión anterior de la misma corte y estableciendo como consecuencia la vigencia prospectiva de sus efectos, y, aunque lo hubiera sido, la decisión en el caso de *Bowie,* estaba sujeta a revocación, como lo fué, por la Corte de Circuito y, como dijo esta última, dicha corte de distrito no es "en sentido alguno una corte de última instancia". Por el contrario esta Corte Suprema sí es una corte de última instancia ya que nosotros determinamos el alcance e interpretación de la ley local. Es cierto que nuestras decisiones en materias constitucionales y en sentido limitado en los demás casos([3]) están sujetas a revisión y revocación por la Corte de Circuito y la Corte Suprema Nacional, empero, ésa no es la situación que confrontamos en el presente caso.

Esta Corte, siguiendo la pauta de la Corte Suprema Nacional, declaró anticonstitucional la Ley de Salario Mínimo para mujeres y luego, siguiendo la nueva pauta sentada por dicha corte, la declaró constitucional. Nuestra ley, como tal, no estaba envuelta en forma alguna ni en el caso de *Adkins* ni en el de *Parrish,* supra, y no podemos aceptar, por tanto, que la declaración de constitucionalidad de la ley del Estado de Washington en el caso de *Parrish* tenga el efecto de privar a esta corte del poder de determinar, una vez revocado el caso de *Pueblo* v. *Laurnaga,* la cuestión local en cuanto a desde qué fecha debía considerarse vigente nuestra ley de salario mínimo, en tanto en cuanto pueda afectar contratos y derechos adquiridos bajo dicha decisión. Esta determinación no envuelve cuestión constitucional alguna, según ha resuelto la Corte Suprema Nacional en el caso de *Sunburst*

---

([3]) Véase *Castro* v. *Junta de Comisionados de San Juan,* resuelto por la Corte Suprema Nacional el 29 de mayo de 1944.

*Oil & Ref. Co.,* supra, cuando por voz del Juez Asociado Sr. Cardozo se expresó en esta forma a las páginas 364-5:

"... El presente es un caso donde una corte se ha negado a considerar su fallo con carácter retroactivo, y se asume la novel actitud de que esa negativa infringe la Constitución de los Estados Unidos.

"Opinamos que la constitución federal nada tiene que ver con la cuestión. Al establecer los límites de adhesión a precedentes un estado puede elegir por sí mismo entre el principio de operación prospectiva y el de aplicación retroactiva. Puede decir que las decisiones de su más alto tribunal, a pesar de haber sido luego revocadas, no obstante constituyen la ley para transacciones intermedias. En verdad hay casos que insinúan muy liberalmente (cita) que el estado *debe* darles tal efecto; pero nunca se ha dudado de que *puede tratarlas* de este modo a su antojo, siempre que con ello se evite la injusticia o la opresión. (Citas). Por otro lado, puede adherirse al antiguo dogma de que la ley declarada por sus cortes tenía una existencia Platónica o ideal antes del momento de su declaración, en el cual caso la declaración desacreditada se considerará como que nunca existió, y la declaración reconsiderada será tenida como la ley original. (Citas). La alternativa es la misma ya proceda la cuestión envuelta en la nueva decisión del derecho común (cita) o del estatutario. (Citas). La elección que haga cualquier estado puede determinarse por la filosofía jurídica de sus jueces, del concepto que tengan del derecho, su origen y naturaleza. Revisamos, no la sabiduría de su filosofía, sí que la legalidad de sus actuaciones."

En nuestra opinión, una cosa es la declaración de constitucionalidad que esta corte pueda hacer de un estatuto nuestro, cuya decisión puede ser revisada en apelación, y otra distinta es la decisión de esta corte en cuanto al carácter prospectivo o retroactivo de nuestra posterior decisión. En este último caso no hay cuestión constitucional alguna envuelta. Además, de hecho nuestra decisión en el caso de *Irizarry* v. *Rivera Martínez,* supra, nunca fué apelada.

Nos damos cuenta de que la cuestión del efecto retroactivo o prospectivo de una segunda decisión revocando una anterior es una de las más complicadas y debatidas. Así lo hace constar la propia Corte Suprema Nacional en el caso

de *Chicot County Dist.* v. *Bank,* 308 U.S. 371 (1939) [4] y la cuestión en general ha sido objeto de discusión y estudio por varios comentaristas. [5]  El caso expuesto por el Juez Hughes es aun más fuerte pues él trata de la existencia de una ley, que ha sido declarada inconstitucional, como un "hecho efectivo". Empero, la regla prevaleciente es que corresponde a la corte de última instancia determinar cuál es la regla que desea aplicar. Localmente ya esta corte en el caso de *Irizarry* v. *Rivera Martínez,* supra, expresó su criterio y no se nos ha convencido de que debamos variar lo que en dicho caso resolvimos. Por el contrario, sería injusto e inequitativo resolver ahora, en el año 1944, que los contratos celebrados desde el año 1937 hasta el año 1940 no estaban cubiertos

---

[4] El Juez Presidente Hughes en dicho caso, si bien lo limitó al resolverlo a una cuestión de *res judicata* que había envuelta en el mismo, se expresó a la pág. 374 en esta forma:

"Las cortes inferiores han actuado bajo la teoría de que la Ley del Congreso habiendo sido declarada inconstitucional, no era una ley; que era ineficaz, que ni confería derechos ni imponía obligaciones y que por tanto no constituía una base para el decreto que se ataca. (Citas). Sin embargo, es bien claro que tales manifestaciones generales en cuanto al efecto de la determinación de inconstitucionalidad, deben considerarse con reservas. La existencia propiamente dicha de un estatuto, con anterioridad a tal determinación, es un hecho efectivo y puede tener consecuencias de las cuales no debe razonablemente hacerse caso omiso. No puede siempre borrarse el pasado con una nueva declaración judicial. El efecto del fallo posterior en cuanto a la invalidez deberá considerarse en varios aspectos—con respecto a relaciones particulares, individuales y corporativas y conducta particular, privada y oficial. Es necesario el examen de cuestiones de derechos que se alega han sido adquiridos, de *status,* de determinaciones anteriores las cuales se creyeron definitivas y se actuó de conformidad con ellos, de política pública a la luz de la naturaleza tanto del estatuto como de su aplicación anterior. Dichas cuestiones caen dentro de las más difíciles de cuantas ocupan la atención de los tribunales, estatales y federales, y de numerosas decisiones se desprende el hecho de que una declaración general de un principio de absoluta invalidez retroactiva no puede justificarse. Sin intentar revisar los diferentes tipos de casos en que las consecuencias de un fallo contra la validez han sido determinadas en relación con las circunstancias específicas de transacciones verificadas en el pasado, limitamos propiamente nuestra consideración a la cuestión de *res judicata,* tal como viene ahora ante nos."

[5] Véase Freeman "Retroactive Operation of Decisions" en 18 Col. Law Rev. 230; von Moschzisker "Stare Decisis in Courts of Last Ressort", 37 Harv. L. Rev. 409; Frank W. Grinell: "Stare Decisis and the Supreme Court of the the United States", 27 J. Am. Jud. Soc. 183 (abril 1944); y anotaciones en 42 Yale Law Journal 779, 48 Harv. L. Rev. 1271.

por lo que en dicho año de 1940 resolvimos en el caso de *Irizarry* y que por el contrario la peticionaria estaba obligada desde el año 1937, en que se resolvió el caso de *Parrish,* a considerar válida nuestra ley sobre salario mínimo para los mismos.

*Se declara con lugar el recurso, se anula la sentencia dictada por la Corte de Distrito de Bayamón el día 10 de febrero de 1944 en el caso civil número 2698 de Elisa Torres et al. v. Corte Municipal de Bayamón, sobre certiorari, y se devuelven los autos a dicha corte para que dicte resolución de conformidad con esta opinión, y a su vez remita el caso a la Corte Municipal de Bayamón para que celebre el juicio en su fondo y dicte la sentencia que proceda.*([6])

---

([6]) El caso de autos se distingue del de *Compañía Popular de Transporte* v. *Corte*, 63 D.P.R. 121, 131, porque en este último la corte municipal ya había dictado sentencia y correspondía a la corte de distrito continuar conociendo del caso en apelación, en un juicio *de novo*; mientras que en el de autos la corte municipal lo único que ha resuelto es una moción eliminatoria y fué para revisar esa resolución que se acudió al recurso de certiorari.